State v. Driscoll.

No. 26,376.

THE STATE OF KANSAS, *Appellee*, v. JOHN DRISCOLL, *Appellant*.

SYLLABUS BY THE COURT.

INTOXICATING LIQUORS—*Evidence—Sale Through Solicitation of Officer.* It is no defense to one who violates the prohibitory liquor law that an officer, in order to detect and prosecute him for the violation of the law, solicited him to obtain and sell intoxicating liquor to the officer and that his prosecution for the violations was based on the evidence so obtained.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed October 10, 1925. Affirmed.

*W. B. Crowther* and *F. C. Norton*, of Salina, for the appellant.

*Charles B. Griffith*, attorney-general, *C. A. Burnett*, assistant attorney-general, and *Bryan J. Hoffman*, county attorney, for the appellee; *H. N. Eller*, of Salina, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.:    John Driscoll was charged with five violations of the intoxicating-liquor law and convicted upon a count for the unlawful transportation of intoxicating liquors.

In his appeal he assigns as error the refusal of the court to give the following requested instruction:

"The jury are instructed that if they believe from the evidence that the witness Peterson, while acting as an officer of the law, induced the plaintiff to commit the crime charged, so that said witness was the moving cause of the commission of said crime, then you cannot convict the defendant for such crime."

In respect to the charge upon which the conviction is based, Peterson, who was aiding the sheriff in procuring evidence of violations of the prohibitory liquor law, testified that he and James Dippler went to the defendant's garage in Gypsum City and asked him to get liquor for them. At first defendant refused to do so, but finally did leave his garage and go somewhere, and later returned, bring-- ing back in his automobile a quart of whisky, half of which he gave to Peterson for the price of $2, and kept the other half for himself. Defendant admitted that at Peterson's request he went out in his automobile and did get a quart of whisky, which he divided with Peterson and Dippler, and for which Peterson paid him $2. De-

1. Criminal Law, 16 C. J. § 57; 25 L. R. A. 346; 30 L. R. A., n. s., 946; 18 A. L. R. 164; 15 R. C. L. 391.

fendant contends that he should escape punishment for this con-
ceded violation of law because Peterson, a law-enforcing officer,
asked him to obtain whisky. The fact that an officer seeking to
discover violations of law asked for and obtained liquor from the
defendant is not a defense to the charge upon which he was con-
victed. Evidently the officer had reasons to suspect that defendant
was engaged in the illegal traffic, as there is some testimony in the
record to the effect that defendant had sold a bottle of whisky prior
to the time of the transaction in question, but there was no con-
viction for that sale.

It is sometimes quite difficult for an officer to procure evidence
of the surreptitious sales of liquor or other violations of the pro-
hibitory liquor laws, and one of the common methods of uncovering
such violations is to have purchases made by one to whom the boot-
legger is willing to risk a sale. The defendant inveighs against
informers, detectives and secret agents, but of them it has been said:

"Detectives perform a valuable and necessary function in modern society.
They are merely private citizens trained in the collection of evidence against
criminals and in the study of the habits of criminals. Modern governments
which are in earnest in seeing that their laws are enforced, that their coinage
is preserved from counterfeiting, that their mails are free from molestation
and robbery, make free use of detectives and secret-service men. The pro-
fession of detectives may be regulated by law, but no sound reason can be sug-
gested why their testimony should be singled out as deserving of less credence
than the evidence of witnesses in general." (*State v. Mullins,* 95 Kan. 280, 302,
147 Pac. 828.)

In *State v. Spiker,* 88 Kan. 644, 129 Pac. 195, the defendant was
convicted of a violation of the prohibitory liquor law, and he chal-
lenged the validity of the conviction because purchases of liquor
were made by persons seeking to discover whether the defendant
was making unlawful sales. It was held the fact that purchases
were made for that purpose constituted no defense to the charge
and did not render the testimony incompetent.

In *State v. Gray,* 90 Kan. 486, 135 Pac. 566, the defendant, who
had been convicted of violating the prohibitory liquor law, com-
plained that witnesses connected with the State Temperance Union
had been paid for procuring evidence against him and that this
fact should have been specially called to the attention of the jury.
A general instruction had been given in the case that the jury should
consider the interest, bias or prejudice of the witnesses, and it was

held that the failure to emphasize the fact that witnesses had visited the defendant's place to procure evidence against defendant was not error.

Cases are cited tending to support the view that if officers invite or aid a person in the commission of a criminal act in order to lay the foundation for his prosecution, a conviction cannot be maintained. A number of such cases are collected in a note in 25 L. R. A. 341. A subsequent note in the same work gathers a large number of the later cases holding that a purchase of liquor for the purpose of having the defendant prosecuted for an illegal sale is no bar to a prosecution, and showing that the courts now almost unanimously hold that a purchase made by an officer or by another with money furnished by the officer for the purpose of detecting and securing the punishment of persons engaged in the illegal traffic in liquor is no defense for such violation. (30 L. R. A., n. s., 946.) Officers who are vested with the authority and responsibility of preserving public peace and security and the enforcement of law are not required to wait until offenses are committed in their presence or until some one brings indubitable proof to them of criminal acts by an offender. They should be vigilant in detecting and exposing crime, and we have no disposition to hamper the officers by a ruling that would prevent the use of the ordinary means employed and in that way thwart the detection and punishment of criminals. In doing so the officers are discharging a public duty and fulfilling a function they were chosen to perform. One who concedes that he has violated the law will not be permitted to shelter himself and escape punishment in the fact that the one to whom he brought and sold the liquor happened to be an officer instead of an ordinary customer. In a New York case, where officers had hired persons to purchase liquor in order to discover, expose and prosecute illegal sales of liquor, it was held that that fact did not prevent a conviction of the defendant, and in answer to his plaint the court said:

"Even if inducements to commit crime could be assumed to exist in this case, the allegation of the defendant would be but the repetition of the plea as ancient as the world, and first interposed in Paradise: 'The serpent beguiled me and I did eat.' That defense was overruled by the great Lawgiver, and whatever estimate we may form, or whatever judgment pass upon the character or conduct of the tempter, this plea has never since availed to shield crime or give indemnity to the culprit, and it is safe to say that under any code of civilized, not to say Christian, ethics, it never will." (*Onondaga County Comrs. v. Backus,* 29 How. Pr. 33.)

No error was committed in refusing the requested instruction, and certainly the evidence was ample to sustain the conviction.

The judgment is affirmed.