**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Dalton STOCKER, Defendant-Appellant.**

**No. 12715.**

United States Court of Appeals Seventh Circuit.

Jan. 13, 1960.

Rehearing Denied Feb. 16, 1960.

Robert Weiner, Walter F. Farrand, John W. Curren, Springfield, Ill., for defendant-appellant.

Harlington Wood, Jr., U. S. Atty., Marks Alexander and Edward F. Casey, Asst. U. S. Attys., Springfield, Ill., for plaintiff-appellee.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and GRUBB, District Judge.

SCHNACKENBERG, Circuit Judge.

Dalton Stocker, defendant, has appealed from his conviction on twelve counts contained in four informations, consolidated for trial which charged him alone in one information, and jointly with

another person in each of the other informations, with twelve violations of the Migratory Bird Treaty Act, 16 U.S.C.A. § 703 et seq., which prohibits the possession or selling of any migratory bird, except as permitted by regulations adopted by the Secretary of the Interior.[1]

It is not controverted that the term migratory birds as used in the Act and regulations includes wild ducks and that the regulations provide for a possession limit of eight wild ducks and prohibit the sale of any wild ducks, except in situations not relevant here.

The charges upon which defendant was tried before a jury, on his pleas of not guilty, involved possession and sale of wild ducks on six occasions.[2]

There was evidence tending to prove the following facts, as summarized:

On October 30, 1956, Anthony M. Stefano, an undercover agent for the Department of the Interior, using the name of Mark DeMarco, visited defendant at his home at Beardstown, Illinois, and told him that he was a duck hunter, and engaged defendant to take him hunting for a fee of $10 on November 3, 1956. The agent appeared on that date, told defendant that he had hunted in Quincy without any luck and asked defendant whether he had any ducks, to which defendant responded in the negative and added that he did not know of anyone in Beardstown that had killed any ducks up to that date. When the agent said that he expected to pay for the ducks, defend-

ant said "yes", but he did not have any on hand. He told the agent that he had done a lot of market hunting in the past, and that he had always received a good price for his ducks, and also that "lately I have cut it out because I have got a good job in Chicago, but * * * I'm going to go back in to it because they are getting a pretty good price for ducks around Beardstown."

Defendant told the agent that he would try to get some ducks for him from some contact later on, but said the price around Beardstown was $2 per duck.

On November 26, 1956, the agent went hunting with defendant, and upon their return the agent mentioned that he could use more ducks than they had shot that day, at which time defendant indicated there was fear, on the part of the "fellas around here", of the agent, because of the Minnesota license plates on his car. The defendant, after cautiously checking over what credentials and papers the agent had with him to make sure that he was not dealing with a federal agent, then asked the agent how many ducks he wanted and the price. The defendant then told him that he would get the agent some ducks and asked the agent's telephone number for this purpose. Again, the defendant told the agent about his market hunting and that he had always gotten a good price, being $2, when he hauled his ducks to Chicago, and $1.75 when he took them to Springfield. The defendant suggested that the agent contact him in about a month.

1. § 704.

2. *Case No. 5778:* Counts One and Two charge the defendant and Michael Stell, the latter-named defendant not being on trial, with possession in excess of the limit, and sale of 75 wild ducks on December 30, 1956. Counts Three and Four charge possession in excess of the limit, and sale of 50 wild ducks on January 6, 1957.

*Case No. 5776:* Counts Two and Three charge the defendant and Perry Swan, the latter-named defendant not being on trial, with possession, in excess of the limit, and sale of 50 wild ducks on November 11, 1957. (Count One charging unlawful transportation of wild ducks was

dismissed upon motion of the Government.)

*Case No. 5793:* Counts One and Two charge the defendant and Louis McCulley, the latter-named defendant not being on trial, with possession, in excess of the limit, and sale of 40 wild ducks on January 31, 1958. Counts Three and Five charge possession in excess of the limit, and sale of 95 wild ducks on February 24, 1958. (*Count Four charging unlawful transportation* was dismissed upon motion by the Government.)

*Case No. 5800:* Counts One and Two. charge the defendant with possession in excess of the limit and the sale of 93 wild. ducks on March 9, 1958.

On December 30, 1956, the agent made the first purchase of ducks from the defendant. On this occasion the agent went to the defendant's home and the defendant told the agent he would call the party who had the ducks, which he did. During this telephone conversation, the defendant told the other party to bring the ducks over, but before concluding the conversation, the defendant told the agent who was standing close by the telephone, that this other party had 125 ducks and that he wanted $2 apiece for them. The agent stated that he had never paid that much before and refused to pay the price, and the deal would be off. The defendant then suggested that the other party on the telephone come over to his house and talk about it. The other person came over and was introduced as "Jack Hardy", an alias. Later evidence showed his name was Michael Stell. Defendant negotiated the price and the agent agreed to take only a part of the ducks at $1.75. While the agent was supposed to be waiting in his car in a nearby parking lot for delivery of the ducks, he walked down the alley in back of defendant's home and saw "Hardy" and the defendant carry two crates of ducks out the back door of the defendant's home. The agent then returned to the front door and was informed the ducks were now ready for him. The delivery was completed in the alley. Back inside the defendant's home the defendant figured the amount due on the transaction and $131.25 was paid by the agent. Defendant asked when the agent would be back and how many ducks he could use the next time. The defendant asked if he could use 50, but the agent hesitated again on the price. Defendant assured him that next time it would not cost more than $1.50.

1. We have set forth the facts rather fully in reference to these transactions which culminated on December 30, 1956, because of the defense of entrapment asserted by defendant. If there was no entrapment in connection with these transactions, our consideration of the evidence in reference to the subsequent transactions convinces us that there is no serious basis for a claim of entrapment as to them.

■ Defendant relies upon United States v. Moses, 3 Cir., 220 F.2d 166, at page 169, where the court said:

"* * * In cases like the present one the admitted fact that public officers proposed and solicited the criminal act is not even offset by an indication that the person solicited had recently engaged in similar criminality. While other facts may prevent such a situation from amounting to entrapment as a matter of law, cases like this will almost always present a substantial question of fact on the entrapment issue which must be considered and resolved like any other question of fact."

We have no quarrel with the law as announced in the Moses case. However, to the facts presented in the record before us, United States v. Becker, 2 Cir., 62 F.2d 1007, is more pertinent. The agent Stefano merely afforded defendant an opportunity and the defendant did what he could to embrace that opportunity. We cannot say that the facts show entrapment as a matter of law. The case presents a substantial question of fact on the entrapment issue, which was properly considered and resolved by the jury like any other question of fact. The jury was fully instructed on entrapment and no objection was noted by defense counsel to the giving of the instructions on this subject. We hold no error was committed in the district court as to the defense of entrapment.

■ 2. Defendant contends that the district court committed error in consolidating the four informations for trial, over his objection. Defendant was named in every count in the four informations. The consolidation facilitated the dispatch of the court's business (for instance, 403 wild ducks were admitted into evidence at one time), and no prejudice to defendant is shown. The consolidation called for an exercise of the

court's discretion. We do not think that it abused its discretion in that regard.

 3. Defendant contends that he was prejudiced by evidence which indicated that he had "done market hunting in the past". It was necessary for the government to go into his past in this respect in order to meet his defense of entrapment. He cannot now complain about this reference to his past.

4. We find no justification for defendant's attack upon the instructions which the court gave to the jury.

 Specifically we note the defendant's objection to the following given instruction:

> One of the offenses charged in a number of the counts in the information on trial is for the unlawful possession of migratory birds. Now, the word "possession" includes actual possession, that is to say, the direct physical control over a thing at a given time or it may be constructive possession, that is to say, one who knowingly has the power at a given time to exercise dominion or control over a thing is then in constructive possession of it. Possession may be sole or joint, that is if one person alone has actual or constructive possession of a thing such possession is sole. If two or more persons share actual or constructive possession of a thing their possession is joint. As used in the counts of these informations, the words "unlawfully possess" means that the defendant on trial had either actual possession or constructive possession or joint possession. Proof of anyone of these types of possession is all that is necessary, therefore, if you find from the evidence, beyond a reasonable doubt that the accused either alone or jointly with others, had actual or constructive possession of the migatory fowl described in any one count of the information, then you may find that such ducks were in the possession of the accused within the meaning of the word "possession" as used in the law and in these instructions.

He asserts that this instruction in effect amended the information, eliminating from consideration a portion of the charge, and also was prejudicial to the substantial rights of the defendant. We do not agree with his contentions. In its essential respects this instruction was approved in Johnson v. United States, 9 Cir., 270 F.2d 721, 724.

For the reasons herein set forth, the judgment from which defendant has appealed is affirmed.

Affirmed.