Argued October 6, affirmed November 10, petition for rehearing
denied December 27, 1966, mandate issued January 25,
U. S. Supreme Court denied certiorari
April 20, 1967

# STATE OF OREGON v. PHILLIP ALAN LeBRUN

419 P. 2d 948

*Charles R. Harvey,* Portland, argued the cause and filed a brief for appellant.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. On the brief were George Van Hoomissen, District Attorney, and George M. Joseph, Deputy District Attorney, Portland.

Before MCALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

LUSK, J.

The defendant was convicted of the unlawful possession of morphine sulphate, a narcotic drug, and has appealed.

His defense was entrapment and the sole assignment of error is directed to the court's refusal to give the following requested instruction:

> "The defendant in this case has claimed entrapment as a defense. Where the doing of a particular act is a crime, if the intent to do the act originates with the defendant, the fact that an opportunity is furnished in order to secure the evidence necessary to prosecute him does not constitute a defense.
>
> "However, if the criminal intent to do the act originates in the mind of the entrapping person or by anyone acting in his behalf, and the accused was not a previously suspected person, then the defendant cannot be convicted because of entrapment, regardless of the fact that what the defendant did was morally wrong and was a violation of the law."

The court submitted the issue of entrapment in an instruction to which no exception was taken. We need not, therefore, consider whether the instruction given was in all respects correct. The point urged by the defendant is that the court failed to submit to the jury "the rule that * * * an illegal act by the defendant could not warrant a conviction if he were en-

trapped unless he was previously suspected." No authority has been cited by either party on this question. Our examination of the cases leads us to the conclusion that the requested instruction was properly refused.

What has been referred to as "the classic definition of entrapment": *Butler v. United States,* 191 F2d 433, 437 (4th Cir), was written by Chief Justice Hughes in *Sorrells v. United States,* 287 US 435, 445, 53 S Ct 210, 214, 77 L ed 413, 86 ALR 249, where he quotes the following from *Newman v. United States,* 299 F 128, 131 (4th Cir):

> "* * * It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor. * * *"

An annotation of this subject as it relates to narcotic offenses may be found in 33 ALR2d 883. See, especially, pages 886-891.

■ There are dicta in the cases to the effect that, if the police did not have reasonable cause to believe that the accused was engaged in violating the law,[1] entrapment would be established as matter of law. See, for example, *Ryles v. United States,* 183 F2d 944 (10th Cir). In *United States v. Certain Quantities of Intoxicating Liquors,* 290 F 824, 826 (D. NH) the court said

---

[1] This is not the language of the requested instruction, but we are treating the request as though it was so intended.

that "one of two conditions must be present to warrant a conviction in this class of cases—either (1) reasonable suspicion on the part of the officers that the party is engaged in the commission of a crime or is about to do so; or (2) the original suggestion or initiative must have come from the perpetrator." The subject is discussed in "Entrapment: An Analysis of Disagreement," 45 Boston Univ L Rev 542, 554-555, where the author characterizes the position taken in the last cited case as "extreme" (p 555, Note 78). With that comment we agree, for "reasonable suspicion," as we view it, is only an element—an important one it may be —in the consideration of the ultimate question where evidence of entrapment comes into the case.

In the *Sorrells* case the Supreme Court said that to determine the question of entrapment both the conduct of the officers and the "predisposition and criminal design of the defendant are relevant": 287 US at 451. The controlling question, the court continued, is "whether the defendant is a person otherwise innocent whom the Government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials": (Id.). The doctrine of the *Sorrells* case was reaffirmed in *Sherman v. United States,* 356 US 369, 78 S Ct 819, 2 L ed 2d 848;[2] and is generally accepted by the lower federal

[2] In both the *Sorrells* and the *Sherman* cases the justices were sharply divided concerning the theoretical basis for the doctrine of entrapment. The majority thought there was an implied exception in the statute in such cases; the minority, that "the true foundation of the doctrine [lies] in the public policy which protects the purity of government and its processes": 287 US at 455; and that entrapment was a defense to be dealt with by the court, not the jury. Furthermore, as stated in the *Sherman* case: "Mr. Justice Roberts [who spoke for the minority in the *Sorrells* case] asserted that although the defendant could claim that the Government had induced him to commit the crime, the Government

courts and the state courts. See the cases collated in the annotation, 33 ALR2d 883, § 3.

Nothing in these statements of the law requires the conclusion that previous suspicion (meaning, we assume, that the accused was a violator of the particular statute involved or some similar statute) or reasonable ground for such suspicion, is an indispensable part of the prosecutor's proof.

And so Judge Learned Hand in *United States v. Becker,* 62 F2d 1007, 1008 (2d Cir), in considering what would "excuse" instigation by an officer, said: "The only excuses that courts have suggested so far as we can find, are these: an existing course of similar criminal conduct; the accused's already formed design to commit the crime or similar crimes; his willingness to do so, as evinced by ready complaisance."

Again, Judge Hand in *United States v. Sherman,* 200 F2d 880, 882 (2d Cir)[9] said that in cases of alleged entrapment two questions of fact arise: "(1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence." Elaborating on his earlier statement in the *Becker* case, above quoted, Judge Hand said:

"* * * As we understand the doctrine it comes to this: that it is a valid reply to the defence, if

could not reply by showing that the defendant's criminal conduct was due to his own readiness and not to the persuasion of government agents. The handicap thus placed on the prosecution is obvious": *356 US at 376-377.*

[9] This is not the decision reviewed in Sherman v. United States, 356 US 369, but an earlier appeal in which the United States Court of Appeals reversed a judgment of conviction and ordered a new trial. Sherman was again found guilty and the judgment was affirmed: United States v. Sherman, 240 F2d 949 (2d Cir). On certiorari the Supreme Court reversed, holding that entrapment had been established as matter of law.

the prosecution can satisfy the jury that the accused was ready and willing to commit the offence charged, whenever the opportunity offered. In that event the inducement which brought about the actual offence was no more than one instance of the kind of conduct in which the accused was prepared to engage; and the prosecution has not seduced an innocent person, but has only provided the means for the accused to realize his preexisting purpose. The proof of this may be by evidence of his past offences, of his preparation, even of his 'ready complaisance.' Obviously, it is not necessary that the past offences proved shall be precisely the same as that charged, provided they are near enough in kind to support an inference that his purpose included offences of the sort charged." 200 F2d at 882.

In other cases some of the courts have come directly to grips with the question before us. In *Swallum v. United States,* 39 F2d 390, 393 (8th Cir), the defendant argued that the agent who procured illegal prescriptions for morphine from him did not have reasonable cause to believe that the law was being violated by him and therefore entrapment was conclusively shown. The court rejected this contention saying:

"We do not find any authority holding that lack of probable cause to believe defendant was unlawfully selling morphine, or lack of suspicion in the mind of an agent who makes a pretended purchase, alone, constitutes entrapment. See United States v. Siegel (D.C.) 16 F.(2d) 134, where the above authorities are digested.

"That an agent manufactures an offense against the law and then incites a person against his will to commit that offense for the purpose of prosecution is the gist of a defense of entrapment."

Judge Clark writing for the court in *United States v. Abdallah,* 149 F2d 219 (2d Cir), said:

"Defendant argues that there must be reason-

able cause for suspicion before a detective may give the culprit an opportunity to commit the crime, citing cases such as De Mayo v. United States, 8 Cir., 32 F.2d 472, 474, 475; Fisk v. United States, 6 Cir., 279 F. 12; Partan v. United States, 9 Cir., 261 F. 515, certiorari denied 251 U.S. 561, 40 S.Ct. 220, 64 L. Ed. 415; United States v. Reisenweber, 2 Cir., 288 F. 520. These cases, however, use facts showing 'reasonable cause' as evidentiary of an already existing criminal intent upon the part of the accused, rather than as an absolute prerequisite to the police practice here involved. * * *" 149 F2d at 222, Note 1.

See comment on the foregoing in Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs by Richard C. Donnelly, 60 Yale L Jnl 1091, 1106.

In *Silva v. United States,* 212 F2d 422 (9th Cir), the defendant asked the court to charge the jury that where an accused had not prior to his contact with the government officers been engaged in criminal acts, and where the officers had no knowledge of any predisposition on his part to commit any crime, any act on the part of the government which induces the accused to commit any crime constitutes entrapment. The court said:

"In effect the proposed charge states that in the circumstances related entrapment is made out as a matter of law. No authority is cited in support of this proposition, and it seems clear that a flat charge of that nature would not be warranted in any case. Among other frailties it would tend directly to mislead the jury. Even though an accused had no previous criminal record and the officers were not shown to have knowledge of a predisposition on his part to commit a crime, still if the jury believed that the felonious intent and purpose were present at the time of the act they would

be free to reject the accused's claim of entrapment. There is always a first time wilfully to engage in criminal conduct." 212 F2d at 424.

The instant case affords a good illustration why such an instruction as the defendant requested should not be given. The defendant is the same Phillip Le-Brun whose conviction of larceny in an office was reversed by this court because his confession to that crime was erroneously admitted in evidence under the rule of *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L ed 2d 977, and *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482. See *State v. LeBrun,* 240 Or 530, 402 P2d 515. The property he was convicted of stealing was narcotics. He was introduced to John R. Giani, a Portland Police Officer engaged in investigation of violations of the narcotic laws, by one Peter Gast, a long-time acquaintance of the defendant. Gast was an informer who had previously put Giani in contact with violators of the narcotic laws. The meeting was in a tavern. Gast brought up the subject of narcotics and, according to Giani's testimony, LeBrun told him about his supply of "good" narcotics and readily agreed to Giani's offer to buy some. LeBrun gave Giani his telephone number and told Giani to call him the next morning. Giani did so and drove to LeBrun's house where he was shown a quantity of narcotics, including morphine sulphate, and at Giani's suggestion they drove to a hotel where Giani had registered, to complete the transaction. As they entered the hotel lobby, LeBrun carrying the narcotics in a handbag, officers stationed there by prearrangement arrested him. So far as the evidence discloses, Giani, to whom the defendant was introduced as Phil, knew nothing about the defendant's criminal record at that time, though he may have been advised of it before he went to the

defendant's house on the following day. Gast was not a witness.

To establish his defense of entrapment the defendant took the witness stand and testified, in substance, that he was drunk when he met Giani and finally yielded to his "pestering" about narcotics. On his direct examination he testified to his conviction on the larceny charge (which was then pending on appeal to this court) and, on cross-examination, to his conviction of other crimes, including burglary. It is stated in the defendant's brief—though it does not clearly appear in the evidence—that the narcotics found in his possession when he was arrested were the same narcotics that he was convicted of stealing.

■■ The defendant's testimony is not convincing in cold print and evidently was not believed by the jury. The whole record presents a picture, not of a man who was overpersuaded by the police into committing a crime which he otherwise would not have committed, but of one ready, able and willing to seize the opportunity to make a sale of the narcotics in his possession. Yet, it could have been found by the jury that at the time the negotiations commenced Officer Giani did not suspect the defendant of being a law violator or have reasonable cause for such suspicion. Those elements should not be a prerequisite to the prosecution's reply to a defense of entrapment.

The judgment is affirmed.