No. 45,693

State of Kansas, *Appellee*, v. Larry L. Wheat, *Appellant*.

(469 P. 2d 338)

Opinion filed May 9, 1970.

*John M. Hensel,* of the firm of Cox, Anderson & Covell, of Mission, argued the cause and was on the brief for the appellant.

*Gerald E. Williams,* Assistant County Attorney, argued the cause and *Kent Frizzell,* Attorney General, and *James W. Bouska,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Price, C. J.: Defendant, Larry L. Wheat, appeals from a conviction of grand larceny as defined by K. S. A. 21-533.

Essentially, only one question is raised—did the trial court err in refusing to give a requested instruction on entrapment?

In September, 1968, an Overland Park police officer, Lequire, became acquainted with defendant through a mutual friend while at a drive-in restaurant in Kansas City, Missouri. Defendant was unaware of Lequire's true identity. During the conversation Lequire learned from defendant that he was engaged in the business of "stripping cars" across the state line in Johnson county. Lequire reported this information to his superiors and was instructed to keep in contact with defendant in order to see what he could uncover.

On a night about ten days later Lequire revisited the restaurant. Defendant was there, and during the conversation told Lequire that he was going out to "fill orders" that night and that he had so many "orders to fill it would take him all night". It was agreed

that Lequire would accompany him, and the two started out for Johnson county in defendant's car—defendant's purpose being to "strip cars" so as to enable him to take care of his "unfilled orders". They drove around for some time—during which defendant "inspected" several different cars, but apparently did not see anything that he wanted. Finally, after further prowling, defendant spotted a box in the rear seat of a car parked next to one he had been "inspecting" on foot. He reported this to Lequire—who had remained in defendent's car, and told him that he was going to break in and steal the box. He instructed Lequire to start the engine so as to be prepared to drive off as soon as he heard defendant close the car trunk. Defendant stole the box, placed it in the trunk of his car, and the two drove off. A few blocks away defendant took over the driving and drove to his sister's apartment where they opened the box. It contained some sterling silver and wedding presents—later identified by the owner, and valued at about $300.00. Defendant was not interested in the articles, and Lequire purchased them from him for five dollars and later turned them in to his superior officers. This prosecution for grand larceny followed.

Throughout the trial—at which defendant testified—he attempted to establish that although it was his intent to go to Johnson county to strip cars—once there, he had abandoned the idea, and was in fact lured back into committing larceny by the repeated urgings and solicitations of Lequire.

On the subject of entrapment the jury was instructed—

"In considering the defense of entrapment, the court advises you that the law does not tolerate a person, particularly a law enforcement officer, generating in the mind of a person who is innocent of any criminal purpose, the original intent to commit a crime thus entrapping such person into the commission of a crime which he would not have committed or even contemplated but for such inducement, and where a crime is committed as a consequence of such entrapment, no conviction may be had with a person so entrapped as his acts do not constitute a crime.

"When law enforcement officers are informed that a person intends to commit a crime, the law in the interests of law enforcement and the suppression of crime permits the officers to afford opportunity for the commission of the offense and to lend the apparent cooperation of themselves or of a third person for the purpose of detecting the offender. When such a practice is followed by peace officers, if the suspect himself originally and independently of the officers intends to commit the acts constituting a crime, and if in the pursuit of such intent he personally does every act necessary to constitute a crime on his part, his guilt of the crime thus committed by him is not affected by and

he has no defense in the fact that when the acts are done by him an officer is present and provides the opportunity for the commission of the offense.

"In other words, a defendant can rely on the defense of entrapment when he is induced to commit a crime which he had no previous intention of committing, but cannot rely on the defense when he has a previous intention of committing a crime and is merely afforded the opportunity to complete the crime by the peace officer."

Defendent concedes the instruction is a correct statement of the law, but contends that it did not go far enough and that the court erred in refusing to give the following requested instruction—

"ENTRAPMENT is the conception and planning of an offense by an officer (or officers) and the procurement of its commission by one who would not have perpetrated it, except for the trickery, persuasion, or fraud of the officer (or officers).

"The fact the defendant made the initial suggestion to commit an offense does not preclude the entrapment defense where the evidence shows that he thereafter abandoned his original scheme and was lured back into it by repeated solicitations of the entrapping officer.

"If the jury believes that the defendant was entrapped, it is your duty to return a verdict of not guilty."

We agree that the instruction given correctly states the general rule relating to entrapment. We further agree there could be instances where the rule stated in defendant's requested instruction would be applicable—provided, of course—the evidence shows an abandonment of the original scheme and that a defendant was in fact lured back into it by the repeated solicitations of the entrapping officer (21 Am. Jur. 2d, Criminal Law § 144, p. 214). But such is not this case. At their first meeting officer Lequire learned that defendant was in the business of stripping cars. At their second meeting defendant stated that he was going out that night to "fill his orders". From the evidence the only "abandonment" was that instead of stealing car parts defendant stole the box from the interior of a car. Defendent went to Johnson county intending to commit larceny—and he did so. The intent originated in his mind—and there was no evidence of an abandonment of that intent. It was not error to deny the requested instruction.

The only other point raised by defendant relates to the application of the habitual criminal statute in imposition of sentence. In his brief and on oral argument, however, he concedes that the case of *Perrin v. State*, 198 Kan. 650, 426 P. 2d 39, syl. 2, decides the question adversely to his contention. We agree.

No error being shown—the judgment is affirmed.