No. 46,542

STATE OF KANSAS, *Appellee,* v. STEPHEN P. REICHENBERGER, and GARY D. FOUCH, *Appellants.*

(495 P. 2d 919)

Opinion filed April 8, 1972.

G. *Edmond Hayes*, of Wichita, argued the cause and was on the brief for the defendants.

*Mark W. Anderson*, Deputy County Attorney, argued the cause, and *Vern Miller*, Attorney General; *Keith Sanborn*, County Attorney, and *Barry Arbuckle*, Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendants appeal from felony convictions for possession and sale of marijuana in violation of the Uniform Narcotic Drug Act (K. S. A. 65-2501, *et seq.*). In a trial to the court the defense of entrapment was asserted by each defendant. The trial court's adverse finding is the subject of attack in this appeal. Defendants contend the evidence established entrapment as a matter of law.

The information was filed in two counts. Defendant Fouch was charged individually in count one and jointly with Defendant Reichenberger in count two. The information was filed on May 14, 1970, and the offenses charged were alleged to have occurred on April 4, 1970.

Count one concerned actions of defendant Fouch occurring outside the Odessa Club at Second Street and Hydraulic in Wichita and count two concerned actions of both defendants occurring at the Quality Chevrolet Parking Lot at 1620 East Douglas in Wichita.

Attorney Russell Shultz represented both defendants in the trial below. There was no request for severance and the defendants were tried jointly without objection. A jury was waived and the case was tried to the court on September 10, 1970. The journal entry, approved by counsel for all parties, relates the trial proceedings pertinent to the issue on appeal as follows:

"After the State's evidence had been presented, counsel for defendants moved that defendants be discharged because of the law pertaining to entrapment. This motion was by the Court overruled for the reason that the defendants had willingly obtained and sold marijuana upon request, and had not been entrapped.

"The defendants then presented their evidence, both defendants having testified in person.

"After argument, the Court found that both defendants were guilty of possession and sale of marijuana as charged."

Each defendant was sentenced to a term of not more than seven years pursuant to K. S. A. 1971 Supp. 65-2519a. The defendants were then released on their own recognizance conditioned that their appeals be prosecuted in good faith and with diligence.

In his argument to the court below, Mr. Shultz conceded that defense of entrapment presupposes commission of the offenses; likewise, defendant's counsel on appeal challenges only the trial court's adverse finding on the defense of entrapment. Since the fact of the commission of the offenses is not challenged, the state's evidence may be briefly summarized.

The state's evidence consisted primarily of the testimony of Charles E. Hastings, an officer assigned to the vice squad of the Wichita Police Department. On the evening of April 4, 1970, Hastings met with several officers, including Rick Palone and Charlotte McPhetters, at the Sedgwick County Sheriff's office. Palone was described as a commissioned buyer, employed by the sheriff. His main duties were to buy narcotics for the sheriff in an undercover capacity. Apparently, Charlotte McPhetters was also an undercover agent for the sheriff.

Hastings searched Palone for money and drugs, finding none, Hastings then gave Palone money consisting of bills, the serial numbers of which had been previously recorded by Hastings.

By prearrangement, Palone and McPhetters drove in Palone's Camaro automobile to Second Street and Hydraulic and parked near the Odessa Club. Hastings followed and parked his automobile across the street from the Odessa Club in a position where he could observe Palone and McPhetters seated in Palone's automobile. Hastings' testimony established the first contact between defendants and Palone and McPhetters which was arranged by a "thin bespectacled man", who was later identified by defendant as a person going by the name of John Nichols, who was reputed to be an informer or police undercover agent. Defendants delivered a packet of marijuana to Palone and were paid $105 in marked money; $100 of which was found on defendant Fouch after his arrest. The other $5 was said to have been given to Nichols.

A second purchase was arranged between defendants and Palone and McPhetters with delivery to be made at the Quality Chevrolet Parking Lot at 1620 East Douglas. Hastings and Dick Fent, an officer of the Sheriff's Department, accompanied Palone and McPhetters in Palone's automobile. When they arrived at the Quality Parking Lot, Hastings and Fent crouched down in the back seat. Soon after the Palone automobile arrived at the parking lot an automobile drove alongside, the two defendants got out and approached the Palone automobile; at this point Hastings and Fent arose from the back seat, exited the Palone automobile and

placed both defendants under arrest. Fouch was seen to drop a foil packet and kick it beneath the automobile. It was retrieved and proved to be marijuana. Fouch was searched and $100 of the marked money was found on his person. Reichenberger was searched and a hashish pipe and a foil packet of marijuana were found on his person.

The events surrounding the first contact with Nichols inside the Odessa Club and the later solicitation by Palone are established by the testimony of defendants. The state offered no evidence to refute the testimony of defendants, thus we take their accounting as accurate.

Fouch testified that he did not use marijuana and normally did not traffic in it. He described the approach by Nichols in his direct examination in this manner:

"Q. How did it happen you came in possession of it at that time?

"A. Well, this Johnny Nichols was inside the club. He went around asking people if they had marijuana or knew where he could get some because he had a friend who had asked him to get some, which later turned out to be Rick Palone over at the Sheriff's Department.

"Q. Did Mr. Nichols ask you if you had any?

"A. Yes.

"Q. Did you have any?

"A. No, sir.

"Q. What happened then?

"A. He asked us if we could get some. I said we might be able to.

"Q. When you say we, who do you refer to as 'we'?

"A. I and Steve Reichenberger.

"Q. What did you say—strike that. What were you doing at the Odessa?

"A. Drinking beer and listening to the band.

"Q. At the time you went to the Odessa did either one of you, to the best of your knowledge, have any marijuana in your possession?

"A. No, we did not.

"Q. After you were approached by Mr. Nichols, did you obtain marijuana?

"A. Yes.

"Q. From whom?

"A. A mexican guy that was inside of the Odessa Club.

"Q. Do you know his name?

"A. No, I do not.

"Q. Did you pay for it?

"A. Me and Steve paid for it.

"Q. How much did you pay for it.

"A. $75.00.

"Q. And had Mr. Nichols talked to you about price?

"A. Yes.

"Q. What did he say about it?

"A. He said that his guy wanted him to buy some—offered him $105.00

for an ounce of it; that he would give me $100 for the ounce so he could make $5.00 off the deal.

"Q.  You and Mr. Reichenberger purchased some?

"A.  Yes.

"Q.  And did this Mexican person have it?

"A.  He left the club for a period of about one or two minutes and came back with a package of what he said was marijuana in a tinfoil package."

### On cross-examination Fouch testified:

"Q.  And you were doing this to make some money, is that right?

"A.  Not exactly:  not only that but because Mr. Nichols asked us.

"A.  We wouldn't have been buying it if Mr. Nichols hadn't come up and asked us not for money or otherwise.

"Q.  You mean that the money wasn't the chief consideration for participating in activity of this kind?

"A.  That is right.

"Q.  Are you saying it was Mr. Nichols' persuasiveness in talking to you?

"A.  He asked us if we could see if we could find him some.

"Q.  So, to help this person out you went ahead and tried to find him some?

"A.  I didn't see no harm in it at the time.

"Q.  What was the prime consideration, then?

"A.  Because he came up and asked us if we would find him some marijuana.

"Q.  So then just because he asked you you went to find him some marijuana?

"A.  Along with several other people in the Club.  They said they would ask around to try and find him some."

### After delivery of the first package to Palone, Fouch testified:

"Q.  And then what happened?

"A.  Mr. Palone asked us if we could get him some more marijuana.  He said that he wanted to buy some more marijuana.

"Q.  What did you tell him?

"A.  We told him we weren't sure but we could ask and if we could we would.  We asked him how much he wanted and he said two more ounces. He said to see what we could do and meet him at the Quality Chevrolet Parking Lot in thirty-minutes."

### Reichenberger's testimony generally conformed with that of Fouch.  On direct examination Reichenberger testified:

"Q.  Why did you buy any on this particular occasion?

"A.  Just sitting around the bar there and I thought it was something to do. I don't really know why I did it.

"Q.  Well, did you buy it for yourself?

"A.  No. —Well, I did it because Mr. Nichols asked me if that is what you mean.

"Q.  And   .   .   .

"A.  I just wanted to give him the favor.  It wasn't the money.  I didn't need any money.

"Q. Why did you buy the second portion that you went up to 29th Street to get?

"A. Officer Palone asked us to."

Before considering the specific issue on appeal, we pause to observe that while this court has long recognized entrapment as a defense in a criminal prosecution (See *State v. Jansen*, 22 Kan. * 498; and *State v. Spiker*, 88 Kan. 644, 129 Pac. 195), it was not until the enactment in 1969 of K. S. A. 1970 Supp. 21-3210 (effective July 1, 1970, now 1971 Supp.), that the subject received legislative attention. Entrapment, as defined under the new statute, was not argued to the court below and although alluded to by both counsel on appeal neither contend, as we understand their positions, that the issue herein should be decided in the context of the new statute. We view the new statute as substantive law and since the offenses charged occurred on April 4, 1970, we decide the issue herein under the law in existence on the date, reserving until properly presented consideration of the subject in the context of the new statute.

By way of further prefatory framework it should be pointed out that, though this prosecution was a trial to the court, the facts found, if supported by substantial competent evidence, must be accorded on appellate review the same weight as if found by a jury.

Entrapment, as a defense in a crimnial prosecution, was considered by this court in the recent case of *State v. Wheat*, 205 Kan. 439, 469 P. 2d 338, wherein we dealt with a situation where the police had learned of defendant Wheat's particular criminal specialty, *i. e.*, "stripping cars." We approved an instrutcion which explained entrapment in terms and rationale similar to those expressed by Chief Justice Hughes, speaking for the court, in *Sorrells v. United States*, 287 U. S. 435, 77 L. Ed. 413, 53 S. Ct. 210, 86 A. L. R. 249, (see discussion thereof by Judge Learned Hand in *United States v. Becker*, 62 F. 2d 1007 [2 Cir. 1933]). The first impression *Sorrells* decision was followed by *Sherman v. United States*, 356 U. S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819, and *Masciale v. United States*, 356 U. S. 386, 2 L. Ed. 2d 859, 78 S. Ct. 827, reh. den. 357 U. S. 933, 2 L. Ed. 1375, 78 S. Ct. 1367. The three cases referred to established guidelines for the federal courts which are also generally followed by state courts in jurisdictions wherein the defense of entrapment is recognized.

In both *Sherman* and its companion case *Masciale* the sole issue was whether entrapment was established as a matter of law. In

*Sherman* the agent's continued persuasion over a period of time, coupled with appeals to pity because of illness and other reprehensible inducement, was held to constitute entrapment as a matter of law. On the other hand, in *Masciale,* even though the agent and defendant met on at least ten occasions, the court held the issue had been properly submitted to the jury. Masicale argued, as do the defendants in the instant case, that his undisputed testimony explained why he was willing to deal with the agent and established as a matter of law. The court rejected the contention holding that while Masciale presented enough evidence for the jury to consider, entrapment was not established as a matter of law and that the trial court properly submitted the case to the jury.

The first paragraph of the *Wheat* instruction reads:

" 'In considering the defense of entrapment, the court advises you that the law does not tolerate a person, particularly a law enforcement officer, generating in the mind of a person who is innocent of any criminal purpose, the original intent to commit a crime thus entrapping such person into the commission of a crime which he would not have committed or even contemplated but for such inducement, and where a crime is committed as a consequence of such entrapment, no conviction may be had with a person so entrapped as his acts do not constitute a crime,' " (p. 440.)

The second paragraph of the instruction applied principles of entrapment to the specific situation in *Wheat* where officers had received information that a person intended to commit a crime.

In the third and last paragraph of the instruction the circumstances under which a defendant can rely on entrapment were summed up as follows:

" 'In other words a defendant can rely on the defense of entrapment when he is induced to commit a crime which he had no previous intention of committing, but cannot rely on the defense when he has a previous intention of committing a crime and is merely afforded the opportunity to complete the crime by the peace officer.' " (p. 441.)

The *Wheat* instruction, as a definition of entrapment, was quoted with approval in *State v. Hamrick,* 206 Kan. 543, 479 P. 2d 854, wherein the trial court's refusal to instruct was held not erroneous since there was no evidence of inducement by an officer.

We believe the instruction in *Wheat* correctly states the law of entrapment and fully explains the application thereof where officers had been informed that a person intends to commit a crime.

In the case at bar, defendants latch on to the term "previous intention" as used in the *Wheat* instruction as a basis for their argu-

ment. Defendants' industrious and thorough counsel asserts that in order to overcome a defense of entrapment or to frame a submissible question of fact in connection therewith there must be some evidence of previous intention or predisposition, and he cites many cases including *Sorrells* and *Sherman* in support of his position. The thrust of his argument is that since there is no evidence of predisposition or criminal design on the part of either defendant prior to their encounters with Nichols and Palone, it must be concluded that defendants were innocent parties induced by law enforcement officers to commit the crime so that defendants could be arrested. We agree that previous intention or predisposition must be shown to rebut entrapment; we do not agree with defendants' claim that there is no evidence of predisposition here.

The state, on the other hand, asserts that solicitation by officers of sales in an ordinary way as between buyer and seller does not constitute entrapment as a matter of law or of fact. (Citing 33 A. L. R. 2d, Anno. [Entrapment-Narcotics Offense], p. 884.) The state correctly points out that the law of entrapment with respect to a buyer-seller situation was developed by this court in cases dealing with sales of liquor and that in those cases (*State v. Merklinger*, 180 Kan. 283, 303 P. 2d 152; *State v. Driscoll*, 119 Kan. 473, 239 Pac. 1105; *State v. Gray*, 90 Kan. 486, 135 Pac. 566; and *State v. Spiker*, 88 Kan. 644, 129 Pac. 195), the defense of entrapment was rejected as a matter of law. The rationale of the court appeared to be as stated by Chief Justice Johnston speaking for the court in *Driscoll*:

". . . One who concedes that he has violated the law will not be permitted to shelter himself and escape punishment in the fact that the one to whom he brought and sold the liquor happened to be an officer instead of an ordinary customer. . . ." (p. 475.)

The reasoning of the *Driscoll* court appears to rest on the premise that it was difficult for an officer to procure evidence of the surreptitious sale of liquor, thus the court was warranted in not examining the conduct of the officer in procuring the sale. Insofar as the cases referred to stand for the proposition that the conduct of an officer or agent in making a buy of such illegal merchandise is not to be scrutinized or subjected to censor as a matter of law, the decisions are expressly overruled in conformity with our holding herein.

From our perusal of authorities dealing with the subject we be-

lieve it may be said that where the events culminating in a criminal offense commence with a police solicitation, the defense of entrapment will almost always present a question of fact for the jury (*United States v. Moses,* 220 F. 2d 166, [3 Cir. 1955]; and *United States v. Stocker,* 273 F. 2d 754, [7 Cir. 1960]), except where the undisputed evidence shows totally unacceptable conduct by the officer or agent as illustrated by *Sherman v. United States,* supra, and *United States v. Klosterman,* 248 F. 2d 191, (3 Cir. 1957). On the other hand, the defense may be rejected as a matter of law where the basic elements are not established as in *State v. Hamrick, supra, and State v. Porter,* 201 Kan. 778, 443 P. 2d 360, cert. den. 393 U. S. 1108, 21 L. Ed. 2d 805, 89 S. Ct. 919.

In the case at bar, it must be conceded that predisposition is not shown by evidence of prior convictions, criminal activity or even previous suspicious conduct. However, the means referred to is only one of the accepted methods of establishing predisposition. Uncensurable solicitation by an officer met with ready compliance by the actor is generally, if not universally, accepted as evidence of predisposition. (*United States v. Rodriques,* 433 F. 2d 760 [1 Cir. 1970]; *State v. LeBrun,* 245 Or. 265, 419 P. 2d 948; *Swallum v. United States,* 39 F. 2d 390, [8 Cir. 1930]; and cases collected in 33 A. L. R. 2d Anno., pp. 883-891, § 3.)

Except in the Kansas cases referred to, where the defense was rejected as a matter of law, this court has not been confronted with the specific question of how predisposition may be shown in a buyer-seller situation. However, an abundance of authority may be found in both state and federal cases wherein the court came directly to grips with the question.

In *Swallum v. United States,* supra, the defendant argued that the agent who procured illegal prescriptions for morphine from him did not have reasonable cause to believe that the law was being violated by him and therefore entrapment was conclusively shown. The court rejected this contention stating:

"We do not find any authority holding that lack of probable cause to believe defendant was unlawfully selling morphine, or lack of suspicion in the mind of an agent who makes a pretended purchase, alone, constitutes entrapment. See *United States v. Siegel* (D. C.) 16 F. (2d) 134, where the above authorities are digested." (p. 393.)

Harmonious holdings of various federal circuits are noted in the case of *Kadis v. United States,* 373 F. 2d 370 (1 Cir. 1967), wherein the defendant argued that no inducement of any kind is justified

unless the police had prior grounds warranting the initiation of their activity. In answering the contention the court said:

". . . We rejected this contention in *Whiting v. United States*, 1 Cir. 1963, 321 F. 2d 72, cert. den. 375 U. S. 884, 84 S. Ct. 158, 11 L. Ed. 2d 114. So have a number of other circuits *Kivette v. United States*, 5 Cir. 1956, 230 F. 2d 749, 754, cert. den. 355 U. S. 935, 78 S. Ct. 419, 2 L. Ed. 2d 418; *Silva v. United States*, 9 Cir. 1954, 212 F. 2d 422, 424; *United States v. Abdallah*, 2 Cir. 1945, 149 S. 2d 219, 222 n. 1, cert. den. 326 U. S. 724, 66 S. Ct. 29, 90 L. Ed. 429; *Hadley v. United States*, 8 Cir. 1927, 18 F. 2d 507, 508; *Newman v. United States*, 4 Cir., 1924, 299 F. 128, 129. We adhere to that view." (p. 373.)

Apparently, the most recent reported federal case dealing with the question is *United States v. Burgess*, 433 F. 2d 987 (5 Cir. 1970). Defendant was convicted of possession of untaxed liquor based on a purchase by an undercover agent. Defendant testified the agent informed him that he needed a case of whiskey for resale in the next county to obtain money for the agent's family which he said was ill and hungry. The whiskey was sold, according to defendant, because of this strong plea to his humanitarian instincts. As in the case at bar, defendant's testimony was uncontroverted and he argued entrapment as a matter of law to the Court of Appeals. The court rejected defendant's argument stating that—

". . . [T]he defense of entrapment is not established as a matter of law when, as in this case, the only evidence of such entrapment is the defendant's own undisputed tetstimony. . . ." (p. 988.)

The court held that the question was properly submitted to the jury. (Citing *Masciale v. United States*, supra.)

Where the question has been raised state courts follow closely the federal decisions.

In the recent case of *State v. LeBrun*, supra, the Supreme Court of Oregon was squarely faced with the identical issue confronting us. Defendant LeBrun was convicted of unlawful possession of morphine on evidence of a sale made to an agent when, as defendant put it, he was drunk and finally yielded to the agent's pestering about narcotics. LeBrun argued that he was entitled to an instruction to the effect that he was entrapped as a matter of law unless previously suspected. The court rejected defendant's contention holding that suspicion or reasonable cause to suspect defendant was a law violator at the time negotiations for the purchase of narcotics was commenced was not a prerequisite to the prosecutor's reply to defense of entrapment. The defendant was not overpersuaded by

the police and was ready and willing to seize the opportunity to make a sale of narcotics.

Illinois has codified the entrapment defense (Ill. Rev. Stats. 1967, Ch. 38, §§ 7-12) in general language similar to that used in the *Wheat* instruction. In the recent case of *People v. Gonzales,* 125 Ill. App. 2d 225, 260 N. E. 2d 234 (1970), the defendants, Gonzales and Mata, argued there was no evidence of predisposition to sell narcotics since the state had offered no evidence of prior convictions or previous criminal activity. The court noted there was no over-bearing persuasion on the part of the agents and that the only reluctance displayed by defendants related to the price. The court held that since the evidence showed defendants were ready to make the unlawful sale, this established the criminal design in the minds of defendants resulting in the acceptance of the opportunity offered, thus negating the defense of entrapment.

Many other state court decisions in harmony are collected in 33 A. L. R. 2d Later Case Service Supplement pp. 883-910. The attention of a reader interested in further perusal of the subject is directed to the commentary of the Wisconsin Board of Criminal Court Judges in their recent publication of "Wisconsin Jury Instructions Criminal" on "Entrapment", p. 780; and a comprehensive analysis of the entire spectrum of entrapment by John S. Goodnow, Vol. 45, Boston University Law Review, (1965), page 542.

Applying what has been said to the evidence before the trial court in the instant case, we are cited no authority and our research reveals none that would support a holding here that the conduct of Nichols in the first instance and that of Palone in the second, considered with the responses of defendants, amounts to entrapment as a matter of law. The testimony of defendants fails to show persistent persuasion or any appeal to sympathy or pity. No claim is made that the money offered was exorbitant or that it was the motivating factor behind the actions of defendants. The responses of defendants, by their own testimony, do not show hesitancy, reluctance or unwillingness that required undue persuasion to overcome.

In considering the facts relative to the issue of entrapment it is essential to distinguish between a trap set for the unwary criminal and a trap set to ensnare the innocent and law abiding citizen into the commission of a crime. (*Sherman v. United States,* supra.). Where a conflict is presented as to whether defendant or the state originated criminal enterprise involving possession or sale of nar-

cotics, the issue whether entrapment occurred is for the trier of facts. (*Frady v. State,* 235 So. 2d 56 [Fla. App. 1970]; cases collected in 33 A. L. R. 2d Anno. [Entrapment-Narcotics Offense], p. 902, § 5, and Later Case Service Supplement, p. 180 § 5.)

In view of the definition of entrapment approved by this court in the *Wheat* case and after considering a wide range of authority on the subject, we conclude that the proper test for determining predisposition or criminal intent, as applied to the evidence here, is whether Nichols or Palone conducted themselves in such a manner or employed methods of persuasion which would have created a substantial risk that defendants would have procured and possessed marijuana in the absence of a predisposition to do so.

The trial court made the requisite finding that the evidence shows predisposition in the minds of these defendants to possess and sell marijuana upon request. We cannot say as a matter of law that the offenses committed by defendants under the circumstances related would have been committed by persons other than those ready and willing to commit them.

One further matter requires our attention concerning this appeal. At the conclusion of the case the trial court announced that it became necessary, because of the testimony of the defendants, to merge the two counts of the information into one. Thus it appears defendants were convicted only of the offenses charged in count two. We have carefully examined count two of the information, we find it fully charges each defendant with possession of marijuana for personal use or otherwise, but it does not charge a sale offense as to either defendant. Thus the convictions for the sale of marijuana as to each defendant must be set aside. The convictions for possession are affirmed.

The cause is remanded with directions that the judgment be corrected accordingly.

PRAGER, J., dissenting: I respectfully dissent from the holding of the majority in respect to the issue of entrapment. In my judgment the defense of entrapment should be sustained as a matter of law under the particular facts and circumstances presented in this case. I have no quarrel with the statement of legal principles as set forth in the opinion of Justice Kaul. The majority opinion approves the statement of the law of entrapment adopted in *State v. Wheat,* 205 Kan. 439, 469 P. 2d 338. In that case this court declared that the

law does not tolerate a person, particularly a law enforcement officer, generating in the mind of a person who is innocent of any criminal purpose, the original intent to commit a crime thus entrapping such person into the commission of crime which he would not have committed but for such inducement, and where a crime is committed as a consequence of such entrapment, no conviction may be had with a person so entrapped as his acts do not constitute a crime. In other words a defendant can rely on the defense of entrapment when he is induced to commit a crime which he had no previous intention of committing, but cannot rely on the defense when he has a previous intention of committing a crime and is merely afforded the opportunity to complete the crime by the peace officer.

The opinion of the majority approves the proposition that once an inducement or solicitation by a police officer has been shown, the state has the burden of proving a previous intention to commit the crime in order to rebut the entrapment. The majority opinion concedes that in the case at bar the previous intention is not shown by evidence of prior convictions, criminal activity or previous suspicious conduct. The majority opinion relies upon the proposition that uncensorable solicitation by a police officer met with ready compliance by the actor is generally accepted as evidence of previous intention. I have no quarrel with this statement of law where under the facts of the case the nature of the response to the solicitation raises a reasonable inference of previous intention to commit the offense.

Let us examine the undisputed facts presented in the case at bar:

(1) The Wichita police officers provided marked currency and originated an exploratory probe to be conducted at the Odessa Club in Wichita. Detective Rick Palone and policewoman, Charlotte McPhetters, were to act as the buyers. An undercover agent, whose exact identity was not established in the record but who was assigned the name of John Nichols, was to be the solicitor.

(2) There was no evidence of any previous sale of narcotics having taken place at the Odessa Club and no particular person was sought for the buy.

(3) The police undercover agent, Nichols, inquired among the 200 odd people at the Odessa Club asking people if they had any marijuana for sale or knew as to where he could get some.

(4) The defendants, Fouch and Reichenberger, were sitting at

one of the tables in the club drinking beer and listening to the band. Neither of the defendants had any previous history of possession or sale of marijuana or other narcotics. The record contains no evidence to show that either of the defendants was engaged in the business of selling narcotics.

(5) Nichols approached the defendants and asked them if they had any marijuana. Their answer was "No".

(6) Nichols told the defendants that a friend wanted him to buy some marijuana and had offered him $105 for an ounce; that he Nichols would pay defendant Fouch $100 for an ounce so Nichols would make $5 off of the deal. It is important to note that the police undercover agent suggested the price to the defendants. It should also be noted that it was the police agent who offered an inducement for the commission of the crime.

(7) Nichols asked the defendants if they could get some marijuana. The defendant Fouch said they *might* be able to.

(8) After Nichols had made the solicitation and inducement, Fouch asked other patrons of the Odessa Club where he could buy marjuana. Someone informed Fouch that a Mexican who was in the place playing pool was the one selling marijuana. It should be noted that the undisputed evidence is that the defendants did not have previous knowledge of a source of supply of marijuana. It was necessary for them to make inquiry of others to locate a source of supply.

(9) The unidentified Mexican left the Odessa Club, procured the marijuana, and returned to the club. Defendants paid him $75. The undercover agent Nichols received the package of marijuana.

(10) Nichols and the defendants left the Odessa Club and met the other undercover police officers, Charlotte McPhetters and Rick Palone, who were handed the marijuana. The police officers then induced the defendants to obtain additional marijuana for them.

In my opinion the nature of the response by defendants to the solicitation in this case was not sufficient to raise a reasonable inference of any previous intention to commit the crime. In the first place it should be emphasized that there is no evidence to show the defendants were sellers of marijuana at the time of the solicitation or inducement. They had no marijuana in their possession available for sale. It is likewise undisputed that at the time of the inducement or solicitation the defendants had no knowledge of a source of supply of marijuana and had to obtain information as

to a source of supply from other patrons at the club. It should also be noted that the defendants did not have a ready quotable price for the marjuana and the amount to be paid was suggested by the undercover police agent.

In its essence the basis of my dissent is that the undisputed evidence is not sufficient to raise a reasonable inference that either of the defendants had any prior intention to commit the offense charged. As the majority opinion states the law should not tolerate a law enforcement officer generating in the mind of a person who is innocent of any criminal purpose the original intention to commit a crime thus entrapping such person in the commission of a crime that he would not have committed or even contemplated but for such inducement. I would reverse the case with instructions to discharge both defendants.

SCHROEDER, J., joins in the foregoing dissent.