**John Jacob PADILLA, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 170–69.**

United States Court of Appeals
Tenth Circuit.

Jan. 28, 1970.

———◆———

Jack F. Seavy, Pueblo, Colo., for appellant.

Milton C. Branch, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before LEWIS and HILL, Circuit Judges, and LANGLEY, District Judge.

LANGLEY, District Judge.

The appellant, John Jacob Padilla, defendant below, was convicted by a jury of selling heroin knowing it to have been brought into the United States contrary to law, in violation of 21 U.S.C. § 174. On appeal, he contends the evidence was insufficient to support the verdict: that it requires finding as a matter of law that he was entrapped, that he acted in the sale of the narcotics as agent of the government, and that his possession was not enough to invoke the statutory presumption that he knew the drug had been unlawfully imported. We do not agree.

The government's witnesses testified to the following pertinent facts. On August 30, 1967, one Stephen Ragulsky was introduced by a police officer of the City of Pueblo, Colorado, to John Michael Zienter, an agent of the Federal Bureau of Narcotics and Dangerous Drugs, for the purpose of acting as an informer in introducing Agent Zienter to persons suspected of being narcotic suppliers in the Pueblo area. On September 1, 1967, Ragulsky introduced Zienter, then acting in an undercover capacity, to Padilla at Padilla's home in Pueblo. He told Padilla that Zienter wished to purchase a spoon of heroin. Padilla said that he did not have a spoon, but had caps of heroin at $5.00 each. Zienter advised Padilla he wanted at least 20 caps or none. Padilla said that would be all right, and for them to wait until he changed clothes.

Following Padilla's directions, the three then drove in Zienter's car to a place in Pueblo called Joe's 96 Tavern and parked. Padilla said he did not see the car of the man he was looking for but wished to make a phone call from the tavern, and went inside. When he returned he said he knew another man from whom they could get heroin and directed them to a location about six blocks from the tavern where they again parked the car. Padilla left for a while

and upon his return pointed out a 1956 Mercury Sedan up the street and told Zienter to follow it, which he did, back to Joe's 96 Tavern. There, Padilla told Zienter and Ragulsky to wait for him in the tavern and stated that he needed the money at this time. Zienter handed him $100.00 and Padilla went off by himself. After about fifteen minutes he returned to the tavern and told Zienter he could get the twenty caps of heroin, which would be delivered at his residence about 2:00 o'clock that afternoon, and that he and Ragulsky could pick them up at 2:30 p. m.

At 2:20 p. m. Ragulsky and Zienter drove to Padilla's house, where Ragulsky went to the door and was handed a package by Padilla. Padilla and Ragulsky then walked out to the car where Zienter was waiting. Ragulsky handed Zienter the package and Padilla told Zienter there were only eighteen caps in the package, that he had kept two of them for his trouble. Thereafter, the contents of the package were analyzed by government chemists and found to contain heroin.

Padilla took the witness stand in his own behalf and gave a somewhat similar account of the events of September 1. He stated, however, that he had previously seen Zienter with Ragulsky about a week before and again about two days after that, but talked only to Ragulsky; that Zienter had returned to his premises on four different occasions after September 1 attempting to make purchases; that Zienter tried unsuccessfully to get him to act as an informer after he was arrested; and that he had obtained the narcotics on September 1 out of consideration for Ragulsky, who he thought was an addict. On rebuttal, Ragulsky denied he was ever at Padilla's house with Zienter prior to September 1, 1967.

■ The trial court correctly instructed the jury concerning the defense of entrapment, following very closely our views on the subject set out in Garcia v. United States, 10 Cir., 373 F.2d 806 and Martinez v. United States, 10 Cir., 373 F.2d 810. Although the defense of entrapment " * * * cannot be applicable to the facts of a particular case unless the commission of the crime charged is admitted * * * " (Martinez v. United States, supra), the judge advised the jury that Padilla was not to be found guilty if the jurors believed he merely acted as procuring agent for Zienter or Ragulsky and not in his own behalf. See United States v. Prince, 3 Cir., 264 F.2d 850, and Garcia v. United States, supra. Also, he fully instructed the jury with respect to the presumption permitted by 21 U.S.C. § 174 upon a finding of possession, in line with our opinion in Amaya v. United States, 10 Cir., 373 F.2d 197. See also United States v. Perea, 10 Cir., 413 F.2d 65. No objection was made to the instructions given and none is raised here. Nor does the appellant question the right of the jury to pass upon the credibility of the witnesses and to weigh the evidence and draw from it all reasonable inferences, or the impropriety of our doing so on appeal. Williams v. United States, 10 Cir., 368 F.2d 972. The only issue to be decided, therefore, is whether as a matter of law the evidence was substantial enough that the jury could properly find beyond reasonable doubt that Padilla was not entrapped, that he acted in his own behalf and not as an agent of the government or its informer, and that he had the narcotics in his possession. In our opinion the evidence is so clearly sufficient to sustain these findings by the jury, inherent in the verdict, as to require little discussion.

■ Considering the evidence from the standpoint most favorable to the government, as we must, it establishes that Zienter and Ragulsky went together to see Padilla for the first time on September 1, 1967, and that simply upon Ragulsky's request Padilla agreed to get the caps of heroin for Zienter, going to considerable trouble to procure them. Aside from not disclosing his identity, no ruse or stratagem was used. From this, the jury could readily conclude that Padilla was disposed to violate the law

and was merely afforded an opportunity to do so. Padilla's role is of course to be determined from all of the facts and circumstances in the case and his explanation that he acted for Ragulsky and not for himself was obviously rejected by the jury, which it had a right to do. And since the jury concluded that Padilla was acting in his own behalf, his contention that his possession of the narcotics was merely as a carrier for Ragulsky is clearly untenable.

The judgment is affirmed.