No. 46,878

State of Kansas, *Appellee*, v. Carl Dean Osburn, *Appellant*.

(505 P. 2d 742)

Opinion filed January 20, 1973.

*Scott E. Jarvis,* of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Carl Dean Osburn was convicted and now appeals from two narcotic charges. In count one he was charged with the unlawful sale of heroin under K. S. A. 65-2502 and in count two he was charged with conspiracy to unlawfully sell cocaine as such a charge is authorized by K. S. A. 1970 Supp. 21-3302. Osburn was sentenced to a term of three to ten years upon count one and to a term of one to five years upon count two, the terms to run concurrently.

Appellant Osburn does not deny his participation in the events which gave rise to the charges but he contends his conduct did not constitute a sale or a conspiracy to sell. He argues that he was a mere middleman or a procuring agent acting on behalf of the purchasers and that he did not sell or conspire to sell the drugs. It should be noted he was not charged and tried for possession of the drugs. There was no essential dispute in the testimony at the trial. The state's principal witness, Richard Jones, was a part-time reserve policeman. He was an undercover agent for the Topeka Police Department, assigned to the vice squad. On this particular case he worked with a police informant, Dan Biddle.

The circumstances which gave rise to count one arose in this fashion. On the evening of December 24, 1970, Jones and Biddle were sent to 1526 Harrison Street in Topeka with instructions to attempt a purchase of heroin. Upon their arrival at that address they asked Frank Fitzgibbons if he knew where they could buy some heroin. Fitzgibbons made a phone call and directed Jones and Biddle to 1222 Long Street. Upon arriving at that address, Jones and Biddle were met by the appellant who opened the conversation by asking, "You came after the heroin?" Jones replied that they had. Appellant asked how much they wanted and was told they wanted "two fixes". Appellant informed them it would be cheaper if they bought a "spoon". Jones insisted on only "two fixes". Appellant then asked for $20, and for the favor of going and getting the heroin he requested an additional $4 so he could get some for himself. Appellant was a heroin addict. Appellant told Jones and Biddle he had to have the cash in advance to pay for the heroin.

Appellant advised Jones and Biddle that he had to go across town to pick up the stuff. He took the $24, left and returned in half an hour with a substance folded in white paper, which proved to be

heroin. It was handed to Jones. Thereupon the appellant produced four other pieces of folded paper from his wallet and asked Jones and Biddle if they would stay and help him "shoot his heroin up." After this was accomplished with a syringe and needle, Jones and Biddle left with their packet of heroin which was produced at the trial.

The charge in count two arose from these subsequent circumstances. Six days later Jones and Biddle, although unannounced, returned to 1222 Long Street in an attempt to purchase more heroin. They were met at the front door by appellant who let them in and led them to his basement bedroom. Appellant then asked Jones and Biddle if they were back for some more heroin. On being advised in the affirmative, appellant again asked how much they wanted and was told "two fixes". Appellant advised them he could get some heroin from a person known as Rick. He then made a telephone call. Thereafter he advised Jones and Biddle that Rick would not sell him the heroin but if they would come back the following afternoon he could get some. The three men talked for a while and then the telephone rang. Appellant left to answer the phone and after some conversation returned with the news that Rick would sell some cocaine and would be by in half an hour to deliver it. Appellant asked for and received $24 and went upstairs to wait for Rick. He came back to put his syringe and needle on to boil and left once more. He returned carrying a police "walkie-talkie" which had been previously kept hidden in the Jones car. Jones retrieved his "walkie-talkie" from the appellant and was told he had better leave. He did so and charges were thereafter filed against the appellant.

Appellant testified at the trial in his own behalf. He was 19 years old, had finished the eighth grade in school, was married but separated from his wife and daughter. He was living in the home of his parents. He had been asked to procure drugs for Biddle a number of times before but had not met Jones prior to December 24. Appellant's story was substantially the same as that told by Jones, except he testified that he was talked into buying the drugs by the two men. He further testified he took the money from Jones only to procure the drugs which he bought from Rick.

The foregoing lengthy factual background is necessary to consider the appellant's points of error raised on appeal.

Appellant's first point is that the two motions for acquittal, one

at the conclusion of the state's case and one at the conclusion of all the evidence, should have been granted since the undisputed facts conclusively showed appellant was merely a procuring agent for the two purchasers, Jones and Biddle.

The procuring agent defense is recognized in a number of Kansas cases decided at a time when the sale of intoxicating liquor was unlawful but possession of liquor was lawful. (See *State v. Cullins*, 53 Kan. 100, 36 Pac. 56, 24 L. R. A. 212; *State v. Turner*, 83 Kan. 183, 109 Pac. 983; and *City of Iola v. Lederer*, 86 Kan. 347, 120 Pac. 354.) We find no Kansas cases, and appellant cites none, in which the procuring agent defense has been raised when the charge has been the unlawful sale of narcotics.

In *State v. Turner*, supra, this court reversed the conviction of Turner on a charge of unlawful sale of intoxicating liquor. The evidence in that case established that Turner at the request of two other individuals took money tendered by them and procured the liquor from a local proprietor or "bootlegger". This court held the defendant was entitled to have his theory of defense submitted to the jury. Paragraph two of the syllabus reads:

"In a prosecution for a violation of the prohibitory law, where the defense is that the defendant purchased the liquor for others, who advanced him the money for that purpose, and that he merely acted as their agent, it is error for the court to refuse to give an instruction to find the defendant not guilty if the jury believed the evidence offered in support of such defense."

In *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 408 P. 2d 877, in an opinion upholding the private club act, the procuring agent concept was recognized as the cornerstone which supports the constitutionality of the act. At page 757 of the opinion it is said:

". . . The general rule is that where a liquor pool is maintained as provided in the Act, the agent designated by the class A club is the agent for the member in procuring the alcoholic liquor from the licensed retail dealer. In such a situation, the agent has no personal interest in the transaction and never becomes the owner of the alcoholic liquor, and is, therefore, incapable of selling it; the sale of alcoholic liquor is to the club member who is the principal. The agent acts as an intermediary for the member and not the seller. . . ."

There appears no valid basis for a distinction between the elements of a sale of liquor and of a sale of a narcotic when in either event a conviction must be based upon proof of the unlawful sale of a substance. If under all the facts a jury finds a defendant merely acted as a procuring agent for a purchaser it would logically follow he did not sell. The unlawful sale in such a case takes place between

the seller and the agent's principal. Where possession of a substance, such as a narcotic, is unlawful a procuring agent for a purchaser may be convicted of unlawful possession thereof; but if he is an agent for a purchaser and not for the seller he is not guilty of an unlawful sale in procuring the unlawful substance.

The procuring agent theory as a defense to selling contraband has generally been recognized by the federal courts in narcotics cases. (See *United States v. Prince*, 264 F. 2d 850 [3 CA]; *Garcia v. United States*, 373 F. 2d 806 [10 CA]; and *Padilla v. United States*, 421 F. 2d 123, 124 [10 CA].) The theory is sound. Nevertheless, it is clear from our earlier cases that the denials of appellant's motions for acquittal were proper. Both *State v. Turner*, supra, and *State v. Hargis*, 84 Kan. 150, 156, 113 Pac. 401, make it clear that once the state has made a *prima facie* case, it is for the jury to believe or disbelieve a defendant's claim that he was merely a procuring agent. In a prosecution for the unlawful sale of a narcotic when the defense of "procuring agent" is properly raised the decision as to whether the accused merely acted as a procuring agent of the buyer or as a seller of narcotics to the buyer is a question of fact for the jury to determine from the evidence. Normally it should not be decided by the court on a motion for discharge.

The defendant requested and the court refused to give the following instruction to the jury:

"You are further instructed that should you find that the defendant merely acted as a procuring agent for the law enforcement officials in obtaining the drugs which are the subject matter of this proceeding, then you must find the defendant not guilty of selling such drugs . . ."

From our previous discussion of the procuring agent cases we are convinced that an instruction should be given on the procuring agent defense when the evidence is susceptible of proving both theories, sale or agency. Under the evidence in the present case either the appellant sold $20 worth of heroin to the officers for $24 and used his profits to purchase additional heroin for himself or he merely acted as a friendly agent in procuring a quantity of heroin for the group. There was no evidence that appellant was making a sale from his own stock of drugs, and only by inference could it be found he was acting in partnership with Rick. He obtained the money from Jones and Biddle in advance and there was testimony that he made the purchase from a person known only as Rick. After the purchase Jones and Biddle were present when the accused

apparently used his share of the drug purchased. The evidence was susceptible to proving a sale by the accused to Jones and Biddle or a procuration of the drug as an agent for Jones and Biddle. The requested instruction formed the basis for a permissible theory of the defense and refusal to give the instruction was in this case reversible error as to count one.

When the procuring agent theory has been properly raised by the evidence and a request for an instruction has been made by the accused a jury should be instructed that should the jury find the defendant merely acted as a procuring agent for the purchaser and not for or as the seller of the drugs the jury should find the defendant not guilty of selling the drugs.

The error previously discussed would likewise inhere in the present conviction for conspiracy to sell cocaine as charged in count two of the information, for if the accused was merely to act as a friendly agent in procuring a quantity of cocaine for Jones and Biddle no sale was contemplated between the accused and his principals Jones and Biddle. However, if the accused was acting for or as the seller then he would be guilty as charged in count two. Appellant was entitled to a procuring agent instruction as to both counts and his conviction on count two must also be reversed in the interest of justice.

The appellant raises various other alleged trial errors and since this case must be reversed and remanded for a new trial we feel it might be helpful at a second trial to examine some additional points raised by appellant.

Appellant raised the defense of entrapment and assigns error because of the court's refusal to give the substitute instructions on entrapment requested by him. The court did instruct on entrapment by quoting the statute, K. S. A. 1970 Supp. 21-3210 and by submitting the instruction on entrapment set forth and discussed by this court in *State v. Wheat*, 205 Kan. 439, 440, 469 P. 2d 338.

The defense of entrapment as it is now recognized in Kansas is encompassed by the following recent decisions of this court: *State v. Wheat*, supra; *State v. Hamrick*, 206 Kan. 543, 479 P. 2d 854; *State v. Reichenberger*, 209 Kan. 210, 495 P. 2d 919; *State v. Williamson*, 210 Kan. 501, 502 P. 2d 777; and *State v. Houpt*, 210 Kan. 778, 504 P. 2d 570. Both the requested instructions and the instructions given by the court on entrapment are far more exhaustive than the instruction on entrapment suggested in PIK

Criminal 54.14. When the instructions given are considered along with the separate instruction of the court placing the burden of proof upon the state and defining reasonable doubt we see no error in the instructions given on entrapment. The instruction requested by appellant merely appears to have certain embellishments which do not materially change the overall meaning of the instructions given by the court. It was not error to refuse appellant's requested instructions on entrapment. See *State v. Jorgenson,* 195 Kan. 683, Syl. ¶ 1, 408 P. 2d 683, and *State v. Finley,* 208 Kan. 49, 56, 490 P. 2d 630.

Appellant urges error in instructions given by the court to define the words, feloniously and willfully. Appellant concedes the definitions given are correct as far as they go, but insists his suggested instructions should have been given. The court instructed that "feloniously" means done with a wrongful or evil intent and that "willfully" means that the act was done intentionally and not accidentally. Appellant's requested instructions would include in the definitions the quality of having a malignant or malicious intent or with a bad or corrupt purpose in mind.

The words feloniously and willfully in the instructions are used to define the level of criminal intent necessary for guilt. The definitions employed by the court for this purpose are within the guidelines provided by K. S. A. 1971 Supp. 21-3201. The definition of "willfully" is drawn directly from the statute. See also PIK Criminal 56.04 (c). The court's instructions were proper.

Appellant requested an instruction that minimum and maximum punishment is provided by law, that sentencing is for the court, that counsel would not be permitted to mention the matter of punishment in their arguments, and that the question of the punishment should not be permitted to influence the jury's decision as to guilt or innocence. It was not error to refuse the instruction in the form requested for it would have served only to raise additional questions in the minds of the jury as to what the minimum and maximum punishment might be. Punishment is of no concern to the jury in this case. (See PIK Criminal 51.10 for proper form of suggested instruction.)

At the conclusion of the evidence the appellant requested that seven special questions be submitted to the jury for answer along with the verdict forms. This request for answers to special questions was properly denied.

Our code of civil procedure provides for the submission of special questions (K. S. A. 60-249 [*b*]). However, this is in civil cases and it lies within the discretion of the trial court. The court may refuse to give special questions even though they relate to issues of fact raised by the pleadings or evidence. See *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, Syl. ¶ 18, 468 P. 2d 269. The Kansas Code of Criminal Procedure contains no similar provision for submitting special questions to the jury. K. S. A. 1971 Supp. 22-3415, which makes certain provisions of law in civil cases applicable to criminal cases, relates to attendance and testimony of witnesses but does not extend to the form or manner of submitting verdicts. The statutory provisions for verdicts in criminal cases is found in K. S. A. 1971 Supp. 22-3421. It contains nothing similar to K. S. A. 60-249 (*b*) which relates to verdicts in civil cases.

In Wright, 2 Federal Practice and Procedure: Criminal, Chapter 7, § 512, p. 364, on federal rules of criminal practice, it is said:

"In the Civil Rules provision is made for the use of special verdicts or of a general verdict accompanied by special interrogatories. There is no such provision in the Criminal Rules, and the submission of a form calling for a special verdict by a jury in a criminal case has been held to be error. 'In such trials the practice has been settled time out of mind to charge but one crime in one count, to accept but one general plea to it and to call upon the jury to make but one general response, guilty or not guilty.' [Footnote citation omitted.] Special verdicts might be acceptable if the only duty of the jury were to find the facts, leaving it to the court to apply the law. In criminal cases, however, it has always been the function of the jury to apply the law, as given by the court in its charge, to the facts. This doctrine preserves the power of the jury to return a verdict in the teeth of the law and the facts."

In *Horning v. District of Columbia,* 254 U. S. 135, 65 L. Ed. 185, 41 S. Ct. 53, in reviewing a criminal case the high court said:

". . . The judge cannot direct a verdict it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts. . . ." (p. 138)

In *Gray v. United States,* 174 F. 2d 919, cert. den. 338 U. S. 848, 94 L. Ed. 519, 70 S. Ct. 90, it was held reversible error for a trial court to require a jury in a criminal case to return verdicts which were in the nature of special interrogatories and answers thereto.

In view of the differences in our civil and criminal statutes relating to verdicts it is apparent the legislature intended to preserve the time honored power of the jury to return a verdict in a criminal prosecution in the teeth of the law and the facts. Therefore we hold

that special questions may not be submitted to the jury for answer in a criminal prosecution. In general the only proper verdicts to be submitted in a criminal prosecution are "guilty" or "not guilty" of the charges.

The remaining points raised by appellant relate to the sufficiency of the evidence and the cumulative effect of errors. In view of our present disposition of the appeal these need not be considered. The judgment of conviction is reversed and the sentences are vacated. The case is remanded for a new trial on both counts in accordance with the views expressed herein.