No. 118,303

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTT W. SHAY,
*Appellant*.

SYLLABUS BY THE COURT

1.

In an alternative means case, when a single act may be committed in more than one way, the jury must be unanimous on guilt for the single crime charged, but the jury does not have to be unanimous as to the means by which a crime is committed, as long as there is sufficient evidence of each alternative means.

2.

When the defendant is charged with aggravated criminal sodomy committed while the victim was unconscious or physically powerless, the victim's testimony that she was too scared to move does not satisfy the statutory element that the crime was committed while the victim was unconscious or physically powerless.

3.

When there is insufficient evidence at trial to support the defendant's conviction of each alternative means of committing a crime, the proper remedy is to reverse the defendant's conviction and remand for a new trial only on the alternative means supported by sufficient evidence in the first trial.

1

4.

It is clear error to instruct a jury that it *will* enter a verdict of guilty if it has no reasonable doubt about the defendant's guilt. But using the word *should* is legally appropriate.

Appeal from Miami District Court; AMY L. HARTH, judge. Opinion filed February 8, 2019. Affirmed in part, reversed in part, and remanded with directions.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Rebecca S. Craig*, assistant county attorney, *Jason A. Vigil*, assistant county attorney, *Elizabeth H. Sweeney-Reeder*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and LEBEN, JJ.

MALONE, J.:  Scott W. Shay appeals his convictions of rape and aggravated criminal sodomy of S.P. He raises two issues on appeal. First, Shay claims that because the State failed to present sufficient evidence that S.P. was unconscious or physically powerless, one of the alternative means of committing both charges, both convictions must be reversed. Second, Shay claims the district court erred in overruling his objections to jury instructions discouraging the jury from exercising its power of nullification.

For reasons we will explain more fully in this opinion, we agree with Shay's first claim, but only as to his aggravated criminal sodomy conviction. Thus, we affirm Shay's rape conviction, but we reverse his aggravated criminal sodomy conviction and remand for a new trial on that charge, only on the alternative means supported by sufficient evidence in the first trial.

FACTUAL AND PROCEDURAL BACKGROUND

Shay, who was 49 years old at the time of the incident, was a long-time friend of S.P.'s family. S.P. considered Shay a father figure and spent every other weekend with him. S.P. would discuss things with Shay which she did not feel comfortable speaking to her mother about, such as her relationship with boys.

In early August 2015, S.P., her friend, T.M., and Shay went camping to celebrate S.P.'s 16th birthday. To start the day, they went swimming at a nearby lake. After swimming, S.P., T.M., and Shay went to Shay's farm to pick up his horse trailer, which he had converted into a camper. The group then went to a campground at a local lake.

After arriving at the campground, the girls asked Shay to go get them some alcohol from the liquor store. Shay returned with a couple six-packs of Twisted Lemonade, S.P.'s favorite alcoholic drink. The group began drinking and S.P. later testified that she had four to seven alcoholic lemonades.

Later, S.P. decided that she wanted to go skinny dipping in the lake. S.P., T.M., and Shay walked to the water and the girls asked Shay to turn around while they took off their clothes. Shay did not swim with the girls. After swimming for a little while, the girls told Shay to turn around so they could get out of the water and put their clothes back on.

Around midnight, S.P. decided to go to sleep and she laid down on her stomach in the camper. S.P. testified she was wearing pajama pants but no underwear. Shay put a blanket over S.P. and she fell asleep. At some point, T.M. also laid down in the camper and fell asleep. S.P. testified that she later woke up and discovered that her pajama pants had been pulled down to her thighs and that Shay was touching her vagina with his fingers. S.P. testified that she just laid still and did not move because she was "scared." S.P. could feel Shay penetrating her vagina with his fingers. According to S.P., Shay also

3

put his mouth on her vagina. S.P. testified that Shay also unsuccessfully tried to penetrate her vagina with his penis. These activities lasted for about 15 minutes.

After Shay stopped touching S.P., she became enraged and started yelling at Shay while kicking and hitting him. T.M. woke up when S.P. started yelling. S.P. told T.M. that Shay had raped her and told her to call her mom. S.P. testified that she started leaving the camper and Shay followed, asking her what was wrong. Eventually, T.M.'s mom arrived and drove the girls to T.M.'s house. S.P. contacted her mom, told her what happened, and went to the police station. S.P. also participated in a rape examination.

When the police interviewed Shay, he at first said nothing happened. But he later admitted to penetrating S.P.'s vagina with his fingers. He also admitted S.P. was sleeping when the touching started.

The State charged Shay with one count of rape committed while S.P. was "overcome by force or fear" or, in the alternative, committed while S.P. was "unconscious or physically powerless." The State also charged Shay with one count of aggravated criminal sodomy committed under the same two alternatives.

Shay did not testify at trial, but he did not contest the allegations that he digitally penetrated S.P. and put his mouth on her vagina. Shay's defense at trial was that the sexual activity was consensual. The district court instructed the jury on each alternative means of rape and aggravated criminal sodomy for which Shay was charged. After deliberating, the jury found Shay guilty of both crimes. The district court sentenced Shay to 165 months' imprisonment on each count, to be served consecutively. Shay appealed.

4

Shay first argues there was insufficient evidence to support his convictions. He does not dispute there was sufficient evidence to prove that each crime was committed while S.P. was "overcome by force or fear." But he claims that because the State failed to present sufficient evidence that S.P. was unconscious or physically powerless, one of the alternative means of committing both charges, both convictions must be reversed.

The State argues that it presented sufficient evidence that S.P. was unconscious or physically powerless when the crimes were committed. The State asserts that "unconscious" and "physically powerless" are options within a means of committing each crime and that there was sufficient evidence to support each option.

Determining whether a statute presents alternative means of committing a crime involves statutory interpretation and construction, subject to unlimited appellate review. *State v. Brown*, 295 Kan. 181, 193-94, 284 P.3d 977 (2012). When reviewing whether sufficient evidence supported each means in an alternative means case, an appellate court "reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015).

In *State v. Wright*, 290 Kan. 194, 224 P.3d 1159 (2010), *overruled on other grounds by State v. Brooks*, 298 Kan. 672, 317 P.3d 54 (2014), the Kansas Supreme Court reaffirmed the rule from *State v. Timley*, 255 Kan. 286, 875 P.2d 242 (1994), that in an alternative means case, when a single act may be committed in more than one way, the jury must be unanimous on guilt for the single crime charged, but the jury does not have to be unanimous as to the means by which a crime was committed, as long as there is sufficient evidence of each alternative means. *Wright*, 290 Kan. at 201. Where,

however, the State fails to provide sufficient evidence of one of the means submitted to the jury, the conviction is reversed for insufficiency of the evidence. 290 Kan. at 205.

Sometimes it is hard to tell whether a statute presents alternative means of committing a crime or whether the statute merely presents options within the same means of committing the crime. The Kansas Supreme Court sets forth the appropriate test in *Brown*, 295 Kan. 181, Syl. ¶ 7. But here the parties agree that when applying that test the district court instructed the jury on two alternative means by which Shay committed both rape and aggravated criminal sodomy: (1) while S.P. was overcome by force or fear; and (2) while S.P. was unconscious or physically powerless.

Shay does not argue there was insufficient evidence to prove that the rape and aggravated criminal sodomy occurred while S.P. was overcome by force or fear. But he argues there was insufficient evidence to prove the crimes were committed while S.P. was unconscious or physically powerless. The State correctly asserts that "unconscious" and "physically powerless" are options within a means of committing each crime, so the State only needs to prove one of them, not both, to support Shay's convictions.

*Sufficiency of the evidence supporting the rape conviction*

The State presented sufficient evidence to support Shay's conviction of rape while S.P. was unconscious or physically powerless. This court has had held that being asleep is the same as being unconscious in the context of aggravated sexual battery. See *State v. Johnson*, No. 107,015, 2013 WL 1876435, at *5 (Kan. App. 2013) (unpublished opinion). In *Johnson*, the State charged the defendant with aggravated sexual battery, and the defendant argued that the district court should have instructed the jury on the lesser offense of misdemeanor sexual battery. This court held that the lesser included offense instruction would not have been factually appropriate because the evidence showed the victim was asleep when the touching started and misdemeanor sexual battery is not an

6

appropriate charge when the victim is unconscious or physically powerless. This court reasoned that whether the victim was able to form conscious thoughts about the touching after she woke up was immaterial. Because the victim was "unable to prevent [the touching] from happening in the first place," a lesser included offense instruction was inappropriate. 2013 WL 1876435, at *5.

The same logic applies to Shay's rape charge. S.P. testified that she fell asleep in the camper and later woke up and discovered that Shay had pulled her pajama pants down and was touching her vagina with his fingers. S.P. testified that Shay was inserting his fingers into her vagina as soon as she woke up, meaning that the digital penetration began when she was still sleeping. Plus, Shay admitted to the police that he penetrated S.P.'s vagina with his fingers and that she was sleeping when the touching started. So there is direct evidence that S.P. was sleeping, or unconscious, when the rape occurred. When viewing the evidence in a light most favorable to the State, there was sufficient evidence that Shay raped S.P. while she was unconscious or physically powerless.

*Sufficiency of the evidence supporting the aggravated criminal sodomy conviction*

Whether there was sufficient evidence to support Shay's conviction of aggravated criminal sodomy is a closer question. There was no evidence presented in the case showing that Shay touched S.P.'s vagina with his mouth while she was still asleep. As we just discussed, S.P. testified that when she woke up, Shay was already inserting his fingers into her vagina. S.P. also testified that during the 15 minutes that she laid there awake, Shay put his mouth on her vagina. But S.P.'s testimony fails to establish that Shay sodomized S.P. while she was still sleeping or unconscious. And there was no other evidence that Shay committed this act while S.P. was sleeping, as Shay denied to the police that he ever touched S.P.'s vagina with his mouth.

7

On whether S.P. was physically powerless, she admitted that she was capable of moving and that Shay "wasn't holding [her] down or anything." But she testified that she did not move because she was "scared." The State argues that S.P. "froze and was physically powerless during the rape and aggravated criminal sodomy."

To support its position, the State cites *State v. Parker*, 48 Kan. App. 2d 68, 282 P.3d 643 (2012), where this court briefly discussed the term "physically powerless" in a rape case, holding that the "ordinary meaning of 'physically powerless' in the context of the rape statute doesn't require total immobility; it requires only a physical inability to resist the attacker." 48 Kan. App. 2d at 81. In *Parker*, the victim was a 94-year-old women who was recovering from surgery at a hospital, was unable to walk without assistance, and was "'very weak'" at the time. 48 Kan. App. 2d at 70. The defendant outweighed the victim by around 150 pounds, and the victim testified that she could not have done anything to fight him. This court held that there was "sufficient evidence to find that [the victim's] age, frailty, and weakness left her physically powerless to resist Parker, a man who was far bigger, stronger, and younger." 48 Kan. App. 2d at 81.

In *Parker*, the victim was truly "physically powerless" to resist her attacker because of her age and frailty compared to the defendant's size. That is not the situation we have here. S.P. admitted that she was capable of moving and that Shay "wasn't holding [her] down or anything." But she testified that she did not try to move out of fear.

K.S.A. 2017 Supp. 21-5504(b)(3), the statute defining aggravated criminal sodomy, lists two pertinent alternative means of committing the crime, when the victim is (A) overcome by force or fear; or (B) unconscious or physically powerless. We agree with Shay that allowing a victim's testimony that she was too scared to move to serve as evidence of physical powerlessness would eliminate any distinction between the two alternative means of committing the crime. This is not a situation like the one in *Parker*;

8

here, there was no evidence presented that S.P. was physically powerless in relation to Shay. See *Parker*, 48 Kan. App. 2d at 81.

Even when viewing the evidence in a light most favorable to the State, there was no evidence that S.P. was unconscious or physically powerless when Shay touched her vagina with his mouth. As a result, there was insufficient evidence to support Shay's conviction of aggravated criminal sodomy under this alternative means of committing the crime and his conviction on that count must be reversed.

*Remedy*

We are not reversing Shay's aggravated criminal sodomy conviction because there was insufficient evidence that he committed the crime; indeed, Shay does not dispute there was sufficient evidence to prove that the crime was committed while S.P. was overcome by force or fear. But the district court instructed the jury that it could find Shay guilty of aggravated criminal sodomy based on an alternative means not supported by the evidence, i.e, the crime was committed while S.P. was unconscious or physically powerless. Our Supreme Court has held an alternative means error can never be harmless and always requires reversal of the defendant's conviction. *Wright*, 290 Kan. at 205.

In *State v. Shaw*, 47 Kan. App. 2d 994, Syl. ¶ 5, 281 P.3d 576, *rev. denied* 297 Kan. 1255 (2012), our court held: "When there is insufficient evidence at trial to support the defendant's conviction of each alternative means of committing a crime, the proper remedy is to reverse the defendant's conviction and remand for a new trial only on the alternative means supported by sufficient evidence in the first trial." The Kansas Supreme Court identified the same remedy for an alternative means error in *State v. Owen*, No. 102,814, 2015 WL 1309978 (Kan. 2015) (unpublished opinion). In *Owen*, the defendant was convicted of forgery, but there was insufficient evidence to support each alternative means of committing the crime. Our Supreme Court held that the proper remedy was to

9

remand for a new trial only on the alternative means of committing forgery supported by sufficient evidence in the first trial:

> "Finally, the State makes a brief argument that challenges the disposition utilized by the Court of Appeals. The panel simply reversed Owen's convictions. The State contends that Owen was not acquitted of forgery, but rather she was convicted based upon sufficient evidence of only two of the charged three alternative means. Therefore, the State contends that the appropriate disposition is to reverse the conviction and remand for a new trial on the alternatives for which there was sufficient competent evidence in the first trial. That way, we can preserve the concept that it is the jury's function to determine guilt, while still preserving the concept that a defendant has a right to jury unanimity. We agree. Owen was not acquitted of forgery, albeit she was not legitimately convicted of having endorsed the check." 2015 WL 1309978, at *7.

Based on *Shaw* and *Owen*, we reverse Shay's aggravated criminal sodomy conviction and remand for a new trial only on the alternative means supported by sufficient evidence in the first trial, i.e., the crime was committed while S.P. was overcome by force or fear. The State cannot retry Shay for aggravated criminal sodomy committed while S.P. was unconscious or physically powerless because there was insufficient evidence to support that conviction in the first trial, and a retrial on this alternative means is barred by double jeopardy. See *Burks v. United States*, 437 U.S. 1, 11, 16-18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (reversal for insufficient evidence is akin to judgment of acquittal warranting double jeopardy protection).

JURY INSTRUCTIONS ON NULLIFICATION

Shay also claims the district court erred in overruling his objections to jury instructions discouraging the jury from exercising its power of nullification. The State responds that the jury instructions given by the district court correctly stated the law and did not amount to reversible error.

10

"When analyzing jury instruction issues, we follow a three-step process: '(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. 307 Kan. at 318.

Shay challenges four instructions given by the district court as erroneous, included below with his proposed language in italics and the language he proposed be removed struck through:

- "Now that you have been chosen as jurors for this trial, you are required to decide this case ~~only~~ on the evidence admitted. At the end of the case, I will instruct you on the law that you ~~must~~ *may* apply to the evidence in order to reach a verdict."

- "It is my duty to instruct you in the law that applies to this case, and it is your duty to consider and follow all of the instructions. You ~~must~~ *may* decide the case by applying these instructions to the facts as you find them."

- "The test you must use in determining whether [the defendant] is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State . . . , you must find [the defendant] not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State . . . , you ~~should~~ *may* find [the defendant] guilty."

- "Your verdict ~~must~~ *may* be founded ~~entirely~~ upon the evidence admitted and the law as given in these instructions."

11

The first instruction set forth above was given orally by the district court as a preliminary instruction at the beginning of the trial and is found at Pattern Instructions for Kansas (PIK) Crim. 4th 50.010. The second instruction set forth above was given by the district court at the end of the trial as written instruction number 1 and is found at PIK Crim. 4th 50.040. The third instruction set forth above was given by the district court at the end of the trial as part of written instruction number 6 and is found at PIK Crim. 4th 51.010. The fourth instruction set forth above was given by the district court at the end of the trial as part of written instruction number 14 and is found at PIK Crim. 4th 68.010.

The district court rejected Shay's modification to each jury instruction, and Shay has preserved the objections for review. Thus, we can move to the second step of the analysis and determine whether error occurred below by deciding whether the requested instructions were factually and legally appropriate.

We will start with Shay's requested reasonable doubt instruction. As Shay points out in his brief, the Kansas Supreme Court has recognized that the jury has the power of jury nullification. See *State v. Osburn*, 211 Kan. 248, 255, 505 P.2d 742 (1973). And it is clear error to instruct a jury that if it has no reasonable doubt about the defendant's guilt, then the jury "*will* enter a verdict of guilty." (Emphasis added.) *State v. Smith-Parker*, 301 Kan. 132, Syl. ¶ 6, 340 P.3d 485 (2014).

But using the word *should* is a different story. This court has rejected Shay's argument about the reasonable doubt instruction in several opinions. See *State v. Allen*, 52 Kan. App. 2d 729, 735, 372 P.3d 432 (2016), *rev. denied* 306 Kan. 1320 (2017); *State v. Trotter*, No. 114,743, 2017 WL 3668908, at *3-5 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 993 (2018); *State v. Ulmer*, No. 114,315, 2016 WL 7428362, at *8-9 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1330 (2017); *State v. Cuellar*, No. 112,535, 2016 WL 1614037, at *1-2 (Kan. App. 2016)

12

(unpublished opinion), *rev. denied* 306 Kan. 1322 (2017). We adopt the reasoning of these decisions and reject Shay's argument about the reasonable doubt instruction.

As to Shay's other objections, the court must not direct a verdict through the jury instructions. *Smith-Parker*, 301 Kan. 132, Syl. ¶ 6. But the instructions here do not direct a verdict. The instructions given by the district court mirror the pattern instructions, and district courts are encouraged to use these pattern instructions as they "have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions." *Allen*, 52 Kan. App. 2d at 734. While jurors in a criminal case have the power of nullification, the proper duty of a jury is to accept the rules of law given to it, apply the rules to the facts of the case, and deliver a verdict based on those rules and the facts. *State v. McClanahan*, 212 Kan. 208, 217, 510 P.2d 153 (1973).

Shay's requested instructions were not legally appropriate. The instructions given here did not sidestep the holding in *Smith-Parker*, none of the instructions flew "too close to the sun of directing a verdict for the State." See *Smith-Parker*, 301 Kan. at 164; *Allen*, 52 Kan. App. 2d at 735. Because Shay's requested instructions were not legally appropriate, the district court did not err by overruling Shay's objections.

Affirmed in part, reversed in part, and remanded with directions.

13